# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3635-18T3

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

T.D.B.-S.

     Defendant-Appellant,

and

D.M.S., III,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF D.O.Z.B.,

     a Minor.

_____

Submitted January 21, 2020 – Decided January 31, 2020

Before Judges Sabatino and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FG-04-0119-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Durrell Wachtler Ciccia, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Amy Melissa Young, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (James Joseph Gross, Designated Counsel, on the brief).

PER CURIAM

After a two-day guardianship trial in this Title 30 case, the Family Part terminated the parental rights of T.D.B.-S. (the "mother") and D.M.S., III (the "father") to their biological son, D.O.Z.B. ("Dante").[1] The mother now appeals the trial court's decision. The Law Guardian and the Division of Child Protection and Permanency urge that we uphold that decision. We affirm.

The record shows that Dante was removed from the mother's care at the hospital within a week of his birth in June 2017, and placed in a resource home

---

[1] We use initials and fictitious names to protect the identity of the parties. R. 1:38-3(d)(12).

where he has since resided. The removal occurred after the hospital alerted the Division because of the parents' history with the Division that dates back to 2007.

The parents have two other children together, both of whom are in foster care. In addition, the mother has an adult daughter and a grandchild from that daughter. The mother first came to the Division's attention after she had abandoned that daughter, who was then age fifteen, and the grandchild.

The unrebutted evidence shows the mother has a long history of mental health illness. Among other things, she has three previous suicide attempts. She exhibits paranoia. At various times relevant to this case, she has been homeless or living in a motel.

After removing Dante, the Division repeatedly attempted to provide the mother with a variety of services, including mental health therapy, visitation, parenting classes, and housing assistance. The mother resisted the therapy, contending she did not need it. As of the time of trial, the mother continued to have unresolved mental health problems. She was disruptive many times during the trial by making noises and physical gestures, which were noted in the trial court's opinion. The court noted that this behavior was consistent with descriptions of the mother's inappropriate behavior during visitation. She took

the witness stand in her own defense and at times engaged in digressive commentary. The court found her testimony was "evasive and incredulous."

The father defaulted in this case and has not provided a suitable placement for Dante. He has not appealed the termination of his own parental rights.

The Division presented testimony by a psychologist, Dr. Linda Jeffrey, as an expert witness at trial. Dr. Jeffrey conducted a hearing evaluation between Dante and his resource mother and concluded he had formed a secure attachment to her. The resource mother stated she was willing to adopt Dante. Dr. Jeffrey was unable to complete a bonding evaluation with the mother because she left the session early and did not appear when the session was rescheduled.

The trial court found Dr. Jeffrey's unrebutted testimony to be credible. Among other things, Dr. Jeffrey opined that Dante would be at risk to suffer serious and enduring harm if the secure attachment to his resource mother was severed. She testified that Dante would likely be developmentally impaired if he were placed in unstable housing with a caretaker, such as his mother, who had unresolved mental health issues.

The Division explored possible relative placements for Dante and found no realistic options. The Division also investigated tribal authorities at the mother's suggestion but received no information that the mother or her family

members were registered members of either tribe. The Division explained to the resource mother the concept of Kinship Legal Guardianship ("KLG"). She declined to pursue such a KLG arrangement and instead preferred to adopt.

At the conclusion of the proofs, the trial judge found the Division had established all four prongs required to terminate parental rights under N.J.S.A. 30:4C-15.1(a)(1) through (4); see also In re Guardianship of K.H.O. 161 N.J. 337, 346 (1999).

In this appeal, the mother contends that the weight of the evidence is insufficient to support the trial court's findings as to all four factors. Among other things the mother contends that, despite her troublesome history and persisting mental health issues, she can become a fit parent. She also stresses that she attended several supervised visitations with Dante, and took advantage of many, if not all, of the services offered to her. She blames her lack of significant progress in therapy upon a poor "match" for her needs and contends the Division should have assigned her a different therapist. She provides no counterproof showing that Dante is not attached to his resource mother or doing well in her care.

Our scope of review in Title 30 guardianship cases is limited. The trial court's findings in such cases generally should be upheld so long as they are

5

supported by "adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014).  The court's decision should only be reversed or altered on appeal if its findings were "so wholly unsupportable as to result in a denial of justice."  N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 511 (2004).  We must give substantial deference to the trial judge's opportunity to have observed the witnesses first-hand and to evaluate their credibility.  R.G., 217 N.J. at 552.  We must also recognize the expertise of the Family Part in matters involving the alleged abuse or neglect of children.  See, e.g., N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012); N.J. Div. of Youth & Family Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div. 2012).

Applying these principles to the evidence in this case, we reject the mother's arguments to set aside the final judgment of guardianship.  All four prongs of the statutory criteria are abundantly supported by the record.  The trial court's decision comports in all respects with the law.

We therefore affirm the termination of appellant's parental rights, substantially for the sound reasons detailed in Judge Francine I. Axelrad's April 10, 2019 oral opinion.  No further discussion of the judge's wise analysis is necessary.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

7